FILED
2014 Aug-18  PM 12:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **HEATHER M. SCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:12-cv-3880-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Heather M. Scott ("Scott") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

### I.  Procedural History

Scott filed an application for child's disibility insurance benefits and Title XVI Supplemental Security Income on October 27, 2009, alleging a disability onset date of

October 27, 1990, due to pain and bowel/bladder problems caused by spina bifida.[1]

(R. 16, 279).  After the SSA denied Scott's claim, she requested a hearing before an

ALJ.  (R. 96-97).  The ALJ subsequently denied Scott's claim, (R. 13-35), which

became the final decision of the Commissioner when the Appeals Council refused to

grant review.  (R. 1-6).  Scott then filed this action for judicial review pursuant to §

205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*,

672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that

the Commissioner's "factual findings are conclusive if supported by 'substantial

evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment

for that of the Commissioner; instead, it must review the final decision as a whole and

---

[1]  Disabled child's insurance benefits are payable if a claimant is 18 years old or older and has a disability that began before attaining age 22.  20 C.F.R. § 404.350(a)(5).  Subsequent to her ALJ hearing, Scott filed a Title II application for disability insurance benefits on her own earnings record, which was considered by the ALJ in his decision.  (R. 16).  All of Scott's claims are considered under the same regulatory framework.  20 C.F.R. §§  404.1520(b), 416.920(a)(2).

determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

3

Determination of disability under the Act requires a five step analysis.  20 C.F.R. §§  404.1520(a)-(g), 416.920(a)-(g).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

4

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[2]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

_____

[2]  This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id.*

### IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Scott had not engaged in substantial gainful activity since October 27, 1990, and, therefore, met Step One. (R. 19).  Next, the ALJ found that Scott satisfied Step Two because she suffered from the severe impairments of "spina bifida with neurogenic bladder, history of colostomy and urostomy, and borderline intellectual functioning."  *Id*.  The ALJ then proceeded to the next step and found that Scott failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 20).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Scott has the residual functional capacity (RFC) to perform

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she cannot climb ladders, ropes or scaffolds.  Secondary to her

borderline intellectual functioning, [Scott] has the ability to understand, remember and carry out short-simple instructions.  She can maintain attention and concentration for two-hour segments throughout an eight-hour workday with normal breaks.

(R. 22).  After finding that Scott "has no past relevant work," the ALJ proceeded to

Step Five, where he considered Scott's age, education, work experience,[3] and RFC,

and determined "there are jobs that exist in significant numbers in the national

economy [Scott] can perform."  (R. 33).  Therefore, the ALJ found that Scott "has not

been under a disability, as defined in the Social Security Act, from October 27, 1990,

through the date of this decision."  (R. 34).

## V.  Analysis

The court now turns to Scott's contentions that the ALJ erred in (1) finding she

can perform medium work; (2) assessing her credibility; and (3) failing to find at Step

Two that Scott has a "severe" intellectual impairment.  *See* doc. 8 at 3-16.  The court

addresses each contention in turn.

A.    The ALJ's RFC finding

Scott contends that the ALJ erred in assessing her RFC because "the record as a

whole is devoid of an opinion from any type of medical source, examining or non-

examining, addressing the claimant's mental or physical [RFC]," and that the ALJ did

not follow the law because he "made medical judgments based on his own review of

_____

[3]  As of the date of the ALJ's decision, Scott was 20 years old, had a limited
education, and no past relevant work.  (R. 33).

the medical records." Doc. 8 at 4.  Unfortunately, Scott's contention is legally

unsound and factually incorrect, in part, because Scott overlooks that the regulations

and the law of this circuit do not require the ALJ to rely on a medical source opinion

when assessing RFC.  Rather, the pertinent regulation provides that opinions on issues

reserved to the Commissioner are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not
> medical opinions, . . . but are, instead, opinions on issues reserved to the
> Commissioner because they are administrative findings that are
> dispositive of a case; i.e., that would direct the determination or decision
> of disability.

20 C.F.R. §§ 404.1527(d), 416.927(d).  One of the specifically reserved examples is a

claimant's RFC:  "Although we consider opinions from medical sources on issues such

as . . . your residual functional capacity . . . the final responsibility for deciding these

issues is reserved to the Commissioner."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Consequently, the Eleventh Circuit has recognized that "the task of determining a

claimant's residual functional capacity and ability to work is within the province of the

ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010).

Moreover, an ALJ's RFC finding can be supported by substantial evidence even

without a medical source statement in the record. *See Green v. Soc. Sec. Admin.*, 223

F. App'x 915, 922-23 (11th Cir. 2007) (rejected the claimant's argument "that without

[the physician's] opinion, there [was] nothing in the record" to support the ALJ's RFC

assessment).  In other words, contrary to Scott's contention, the ALJ does not commit an error if the ALJ's RFC is not based on a medical source opinion.

In any event, contrary to Scott's contention, the ALJ relied on medical source opinions in the record in assessing Scott's RFC.  One of these opinions was by Dr. John Maloof, the State agency consultant, who found Scott could perform medium work.  (R. 405).  Consistent with the regulations, which mandate that an ALJ must consider the findings of a State agency medical consultant, who is considered an expert, and must explain the weight given to such findings in the same way as with other medical sources, *see* 20 C.F.R. § 416.927(e)(2), the ALJ gave Dr. Maloof's opinion "great weight" and explained his reasons:  "[T]he undersigned gives great weight to the assessments by a state agency medical consultant dated January 5, 2010. The consultant noted [Scott's] essentially normal motor exams at Children's Hospital as well as her full daily activities despite her spina bifida and bowel/bladder problems."  (R. 33).  The next opinion the ALJ properly relied on was by the State agency's psychiatric consultant, Dr. Robert Estock:  "The undersigned also generally concurs with the state agency medical consultant's mental evaluation of no severe or marked mental limitations."  *Id.*  The ALJ found that Dr. Estock's and Dr. Maloof's "opinions are consistent with the objective, clinical findings, [Scott's] daily activities and [Scott's] work activity."  *Id.*  Finally, the ALJ relied on Dr. Bonnie Atkinson, Ph.D., the consultative mental examiner, noting that Dr. Atkinson found Scott "had

sufficient judgment to make acceptable work decisions and direct/manage her own funds," and "did not [have] significant work-related limitations."  (R. 20).  As is evident, contrary to Scott's contention the ALJ, in fact, relied on medical opinions in forming Scott's RFC.

     Scott's contention misses the mark also because it ignores that the regulations state that it is Scott's responsibility to provide evidence showing the presence of an impairment and how it affects her functioning:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled . . . .

20 C.F.R. § 416.912(c).  As a result, Scott "bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).  Based on the review of the record here, the court finds that Scott failed to meet her burden of showing that she is disabled.  Significantly, the ALJ properly relied on Scott's extensive treatment records, and other evidence to assess her RFC.  Because the record contained sufficient medical evidence to allow the ALJ to assess Scott's RFC and determine whether she was disabled, the record was complete. *See* 20 C.F.R. § 404.1513(e).  Consequently, no additional development was required,

and the ALJ committed no reversible error in assessing Scott's RFC based on the medical and other evidence in the record.

> B.     The ALJ's Credibility Finding

Scott next contends that the ALJ improperly relied on her activities of daily living in assessing her credibility with respect to her pain testimony.  In considering Scott's subjective symptoms, the ALJ first found that Scott's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," (R. 24), and, thus, Scott met the requirements of the pain standard in this circuit.  *See* Section III, *supra*.  However, the ALJ found Scott's allegations of disabling symptoms were not fully credible. (R. 24)  It is this determination that Scott challenges, and in light of her appeal, this court must review the ALJ's finding to determine if it is supported by substantial evidence.

According to Scott, her "activities of daily living are not in any way inconsistent with an inability to perform sustained work activities."  Doc. 8 at 11.  However, a review of the record shows the ALJ properly relied on Scott's daily activities to assess her credibility.  Among other things, the ALJ observed that although Scott "alleged at the hearing she cannot sit more than 10 minutes, stand more than five minutes or walk very far," she also "reported her work as a server required her to walk three hours, stand four hours and sit one and one-half hours during the day."  (R. 30-31).  The ALJ also noted that while Scott  reported in November 2009

"that she was disabled in part due to back pain and limited ability to walk," at that time "she was working as a server[4] that required standing, walking, lifting and carrying." (R. 32). Finally, the ALJ noted that Scott reported to Dr. Atkinson on January 20, 2010, that she engaged in "a wide range of daily activities."[5] *Id.* While Scott obviously disagrees, the ALJ's consideration of Scott's activities in assessing Scott's credibility was proper because an ALJ may consider a claimant's daily activities in making credibility findings. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984); *see also* 20 C.F.R. § 404.929(c)(3)(i) (ALJ "will consider . . . [a claimant's] daily activities" in evaluating the intensity and persistence of symptoms).

Moreover, the ALJ did not unduly rely on Scott's daily activities, and in fact, considered other factors in assessing her credibility, including the lack of medical evidence supporting Scott's allegations and Scott's failure to report her alleged physical limitations to her treating doctors. For example, the ALJ remarked that, contrary to Scott's testimony, the medical record "does not show [Scott] required assistance with catheterizations or that they required that much time," (R. 30), and that "there is no medical evidence to support" Scott's testimony that "her legs gave way at

---

[4] Scott worked part time as a cafeteria attendant at an assisted living/nursing home, (R. 64), and testified she worked about 15 hours per week, until December 1, 2010, (R. 54-55), one month before her baby was born, (R. 32).

[5] Scott reported to Dr. Atkinson that on a typical day, "she watches TV or works," prepares sandwiches, "can dust, do dishes, and sweep, sometimes," "is able to perform routine hygiene, grooming, and dressing activities independently," and "can take medications independently." (R. 411).

times." (R. 31). The ALJ also observed that although Scott's mother stated Scott's "legs got weak or hurt" after walking two or three blocks, "[t]hese reports were never made to [Scott's] doctors and her exams revealed no such findings," and that when Dr. Atkinson examined her, Scott "did not report chronic, severe pain, weakness or limitations in her ability to work as a server." (R. 32). Unfortunately for Scott, the ALJ's reliance on inconsistencies and conflicts between Scott's statements and the medical evidence is in accordance with the regulations,[6] and shows that the ALJ did not unduly rely on Scott's daily activities in assessing her credibility.

Ultimately, consistent with the pain standard, the ALJ articulated specific reasons for discounting Scott's testimony of disabling symptoms–all of which are supported by substantial evidence. Based on this record, Scott has failed to show that the ALJ erred in failing to credit her testimony of disabling symptoms. Accordingly, because this court does not reweigh the evidence, there is no reversible error in the ALJ's credibility finding.

C.     The ALJ's Finding at Step Two

Finally, Scott contends that the ALJ erred in failing to find her intellectual impairment as "severe" at Step Two. Doc. 8 at 13. The record belies this contention

---

[6] 20 C.F.R. § 404.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.").

because the ALJ, in fact, found at Step Two that Scott had the "severe impairment" of "borderline intellectual functioning." (R. 19). To the extent Scott is actually quibbling with the specific impairments listed in the ALJ's Step Two finding, this contention fails because the ALJ found in Scott's favor at that step. In this circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," so long as Scott's impairments were considered in combination at the later steps. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Here, the ALJ found multiple severe impairments, including borderline intellectual functioning, and proceeded to Step Three, where he found there were "insufficient findings . . . to confirm the presence of an impairment or combination of impairments that meet or equal in severity the criteria of a listed impairment." (R. 20). This finding alone is sufficient to establish that the ALJ considered Scott's impairments in combination. *See Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir.1991) (ALJ's finding that a claimant did not have "an impairment *or combination of impairments* listed in, or medically equal to one [in the Listings]" was sufficient to show the impairments were considered in combination) (emphasis in original). Moreover, the regulations state that the only consequence of the analysis at Step Two is that if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. *See* C.F.R. § 404.920(c)a)(ii). Accordingly, even assuming that Scott is correct, the ALJ's failure

14

to identify all of her severe impairments is harmless because it did not, in any way, change the ALJ's decision. *See Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983)).

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Scott is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done this 18th day of August, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE